UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim No. 23-CR-399 (JMC) |
| | : | |
| JOSEPH KERRY HICKS, | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO
<u>PRECLUDE USE OF INFLAMMATORY LABELS</u>**

Defendant Joseph Kerry Hicks moves to preclude the United States from using certain terminology to describe the events of January 6, 2021 at trial—including the terms "riot," "insurrection," or "attack." ECF No. 30 at 1–2. In essence, Hicks asks that the Court prevent the government from using language that accurately establishes and describes the defendant's crimes. Because these terms fairly describe the riot, rioters, and Hicks' conduct that day, this Court should deny the motion.

**I.    BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Defendant Joseph Kerry Hicks—holding a flag associated with the Three Percenters

movement—joined the mob storming the U.S. Capitol Building. ECF No. 1-1. Hicks first entered the Capitol through the East Rotunda Door and spent about 17 minutes inside before leaving through the same door. *Id.* at 3–9. At approximately 3:29 p.m., Hicks attempted to re-enter the Capitol building through the same East Rotunda door, by force. *Id*. at 10. U.S. Capitol Police and Metropolitan Police Department ("MPD") officers struggled to expel rioters out of the Capitol through the door. *Id.* In order to prevent the officers from expelling the rioters, Hicks added his body weight to the rioters at the door. *Id.* The officers successfully overcame and expelled the rioters moments later. *Id.* Hicks—now on his own—then backed into the officers at the entrance, pushing against the officers with his back before retreating, away from the Capitol. *Id.*

For this conduct, Hicks is charged by Indictment with five counts: violations of 18 U.S.C. § 231(a)(3) (Civil Disorder), 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). ECF No. 12.

## II.     ARGUMENT

Hicks argues that the government's use of the terms "riot," "insurrection," or "attack" should be excluded under Federal Rule of Evidence 401 and 403, or in the alternative are inadmissible hearsay. Because these terms accurately describe the events of January 6, 2021 and Hicks' role in it, and don't actually constitute hearsay, the Court should deny his motion.

Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United*

*States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society.  However, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor— indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. What took place on January 6, 2021 was in fact a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. Indeed, after carefully considering the facts of other January 6 cases, many other

members of this Court have recognized the riot as just such an attack. *See, e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. While Hicks is not charged with assault, Hicks' own role involved pushing—by himself and with other rioters—against officers in order to re-enter the Capitol during the attack. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of the defendant's conduct.[1]

---

[1] Hicks' appeal to the prejudice of these terms is also less persuasive given that the Rule 403 balancing test "concerning unfair prejudice has a highly limited application, if any at all" in a bench trial. *See, e.g., Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 11-cv-1623, 2015 WL 13680822, at *1 (D.D.C. June 12, 2015). And in the case to which Hicks cites—*United States v. Sheppard*—Judge Bates in fact denied the defendant's motion in limine because "outlining precisely which terms the government may or may not use [during the jury trial] would sweep too broadly." Order, ECF No. 66 at 6, 21-cr-203 (JDB) (D.D.C. Jan. 6,

Hicks oddly argues that such terms violate the rule against hearsay. ECF No. 30 at 4. Hearsay is "a statement that: (1) the declarant does not make while testifying at a current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The rule against hearsay is about *evidence*, not the arguments of counsel. In addition, that some witnesses may describe the events of the day using these terms does not render them inadmissible just because the terms carry separate legal significance. *See also* ECF No. 66, *Sheppard*, 21-cr-203 at 6 ("[W]itnesses are not precluded from using certain words . . . if, say, a police officer responded to a defendant's actions because he believed the defendant to be "disorderly," the officer should be allowed to use that term in his testimony, despite the fact that it also happens to be a word used in the statute simply because they also carry some legal significance."); Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). And defense is free to press any objection to specific language a witness uses at trial.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Hicks' motion in limine to preclude the use of the terms "riot," "insurrection," or "attack" at trial. ECF No. 30.

---

2023). The Court should reach the same result here.

                    Respectfully submitted,

                    MATTHEW M. GRAVES  
                    United States Attorney  
                    D.C. Bar Number 481052

By:    */s/ Michael L. Barclay*  
        MICHAEL L. BARCLAY  
        Assistant United States Attorney  
        New York Reg. No. 5441423  
        U.S. Attorney's Office for the  
        District of Columbia  
        601 D Street, N.W.  
        Washington, DC 20530  
        Michael.Barclay@usdoj.gov  
        (202) 252-7669

        KATHRYN E. BOLAS  
        Assistant United States Attorney  
        NY Bar No. 5704234  
        United States Attorney's Office  
        Capitol Siege Section  
        601 D Street, NW  
        Washington, D.C. 20530  
        Phone: 202-252-0872  
        Kathryn.Bolas@usdoj.gov